ABBY M. LEEDS, PLAINTIFF IN ERROR, v. CAMDEN AND ATLANTIC RAILROAD COMPANY, DEFENDANT IN ERROR.

In proceedings to condemn property for railroad purposes, the value of the land and damages are to be estimated as of the time of condemnation, according to the exact terms of the charter.

·On writ of error to the Circuit Court of Atlantic county.

For the plaintiff in error, *J. J. Crandall.*

For the defendant in error, *S. H. Grey.*

The opinion of the court was delivered by

SCUDDER, J. The Camden and Atlantic Railroad Company having applied, in February, 1888, for the appointment of three commissioners to examine and appraise the land and materials and to assess the damages of the plaintiff, pursuant

to the charter of the company (*Pamph. L.* 1852, *p.* 263), on proof of its inability to agree with the owner for the use or purchase of the land required, such commissioners were appointed, and made and filed their report according to the seventh section of their charter.

The plaintiff, being dissatisfied with the report of the commissioners, applied for an issue to be formed and a trial by a struck jury, at the next Circuit Court in Atlantic county, according to the terms of the charter. The trial was had, and the case is brought here on exceptions taken to the rulings of the court. The one essential decision of the trial judge, which controlled others in the case, was, "that compensation must be computed as of the time when the track was originally laid, if done under circumstances not constituting a trespass."

The railroad was built, a single track in width, over the land of the plaintiff in 1854, and it has been used continuously by the company since that time. The application to condemn the land is for the entire width of one hundred feet, the limitation named in the act. When the road was originally laid, the land was most of it low sedge meadows, with some salt grass near the upland, and it was located at or near the present position of Atlantic City. There was evidence offered of a consent, in writing, for the occupancy of the land, by James Leeds, who at that time owned the land now belonging to the plaintiff. The agreement in writing was lost, but its contents were given by the recollection of a witness, to show that the company did not enter as trespassers, but by the consent of the owner at that time. This explains the reference of the judge to "circumstances not constituting a trespass," and is in apparent compliance with the provision of the charter in the last clause of section 6.

This section authorizes the company to construct its railroad, subject to compensation, and provides that the payment, or tender of payment, of all damages, for the occupancy of lands through which the said railroad may be laid out, be made before the said company, or any person under their direction or employ, shall enter upon or break ground in the

premises, except for the purpose of surveying and laying out the road, unless the consent of the owner or owners of said lands be first had and obtained.

The consent having been ended by an action brought by the plaintiff to eject the company from the land occupied by their road, as appears in the case, this proceeding was taken to condemn. It must be conducted according to the form prescribed by the statute, for the company has no other power to acquire the lands of the plaintiff *in invitum*, and the method of compensating the plaintiff is therein provided. In the course of this proceeding, three commissioners shall be appointed to examine and appraise the land or materials, and to assess the damages, upon notice, who are to meet at the time and place appointed and proceed to view the said land and materials, and to make a just and equitable estimate or appraisement of the same, and assessment of damages, which shall be paid by the company for such land and materials aforesaid, and make report. By the terms used they are to view, examine, appraise, estimate and assess. No authority is given by these words, used in this charter, to take the testimony of witnesses under oath, or to act otherwise than as viewers and appraisers of the present value of the land, and the damages incident to the construction of the road. They cannot determine questions of trespass, license or previous occupancy when acting under the statute. What other rights and remedies the parties may have, or what terms may be imposed when either the railroad company or others are seeking equitable rights or using equitable remedies, are aside from the present case, which are strictly confined to the statutory requirements. On appeal from the report of the commissioners, the court and jury are limited to the same subject matters that were before them ; for it is said " it shall be the duty of the said jury to assess the value of the said lands or materials and damages sustained."

Although the act contemplates the prompt acquisition of the right of entry, and use of the land, and satisfaction for damages, either by agreement or condemnation, and makes no

provision for delays, yet the company may at any time acquire the title to the land occupied by the road, by the provisions of the charter for that purpose. This has been done in some cases after years of previous occupancy. *Coster* v. *New Jersey Railroad and Transportation Co.*, 3 *Zab.* 227; *S. C.*, 4 *Id.* 730. Whether, in this case cited, damages for the previous occupancy were included, does not appear, and the right was not decided.

But in *Metler* v. *Easton and Amboy R. R. Co.*, 8 *Vroom* 222, the question of time of entry was directly before the court, and it said that the time when the appraisement was made by the commissioners is the period with reference to which the valuation of the land and damages for the taking is to be made. The report of the commissioners is regarded as the time when the condemnation is effected, and that is when the taking is complete, for the purpose of fixing the time, as to what the valuation must be made, and the right compensation.

In *Lehigh Valley R. R. Co.* v. *McFarlan*, 14 *Vroom* 605, 611, it is said that it has been uniformly held that, in proceedings to condemn, the value of the lands and damages are to be appraised as of the time when they were taken, though the title may not pass until the appraised value is paid.

The equitable rule, which appears to have been followed in the present case, is, that when prepayment has been waived, the landowner retains an equitable lien upon the land for the payment of such damages as he has sustained, when the company violates the conditions upon which the entry without compensation was permitted, which may be enforced in a court of equity. *Wood Railw. L.* 785.

The value of the land and damages at the time the entry was made, and interest from that time, have been fixed as a proper measure of damages in some such cases. See *Hudson County R. R.* v. *Booraem*, 1 *Stew. Eq.* 450, and later cases that have followed it.

When parties are before that court seeking the adjustment of equitable claims for and against the railroad company, all

the rights of the landowner will be protected, and full compensation may be made, not only for the value of the land taken and the damages incident to the taking, but also for the breach of any agreement made with him, and allowance for the occupancy of the land under such agreement or by consent or license. When the company proceeds to condemn lands, under its charter, it can act only according to the exact terms of the power therein conferred. There was error in the ruling and the judgment will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, MAGIE, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, SMITH.   10.